IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Eugene Williford, ) | |
| ) | Civil Action No. 6:06-1876-HMH-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| American Building Maintenance ) | |
| Company of Georgia, previously ) | |
| identified as "ABM Janitorial Services", ) | |
| ) | |
| Defendant. ) | |
| ) | |

        This matter is before the court on the defendant's motion for summary judgment. The *pro se* plaintiff, Eugene Williford, brought this action against the defendant, his former employer, claiming that he was subjected to discriminatory employment conditions and wrongfully terminated from his employment because of his race and his age in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act ("ADEA"). In addition, the plaintiff asserts that the defendant withheld certain payments to which he was entitled, in violation of the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq*.

        The defendant filed its motion for summary judgment on February 29, 2008. By order filed March 6, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response to the motion for summary judgment on April 7, 2008.

**FACTS PRESENTED**

The defendant is a company that provides maintenance services to a variety of businesses, including high-rise office buildings, banks, universities, and other facilities def. m.s.j., ex. A, Duncan aff. ¶ 3). The plaintiff is a 57-year old, black male (*id.*, ex. B, pl. dep. at 9). The plaintiff began working for the defendant in 1998 (*id.* at 105). He started out as a part-time employee working as a weekend supervisor at one job site and, a year or so later, became a full-time employee at another job site (*id*. at 107, 109-10). In 2000 or 2001, the plaintiff was transferred to a third job site, referred to as the US8 job site, as the account manager (*id.* at 114). The defendant's customer at this site was Michelin (Duncan aff. ¶ 4, pl. dep. at 116, 147).

The plaintiff's job duties as the account manager at the US8 job site required him to manage the "cleaners," purchase supplies, request additional staff as needed, and maintain a balanced budget for the site (pl. dep. at 145-46; Duncan aff. ¶ 4). This position also required the plaintiff to interact directly with Michelin's managers and employees (pl. dep. at 146-47; Duncan aff. ¶ 5). Because the plaintiff was directly involved with the customer's managers and employees, it was vital that he provide excellent customer service to these individuals (pl. dep. at 147-48; Duncan aff. ¶ 5).

In 2002, the plaintiff received a performance appraisal that said he needed to "slow down and get [his] account in budget" (def. m.s.j., ex. C; *see* pl. dep. at 121-30). The appraisal noted that the plaintiff had a past problem with being too defensive (def. m.s.j., ex. C; *see* pl. dep. at 123-25). The plaintiff was involved in several incidents in which he clashed with his supervisors. He describes one incident where he disagreed with his manager, Rick Lang, over whether his account was over budget (pl. dep. at 117-19). According to the plaintiff, Mr. Lang "fl[ew] off the handle," prompting the plaintiff to hang up the phone on him (*id.* at 118). In another incident, the plaintiff had an altercation with Dale Morton, another one of his supervisors. Mr. Morton filed an Employee Corrective Notice

related to this incident (pl. dep. at 150-54; *see* def. m.s.j., ex.. D (D0039)).  The Notice states that, in a phone conversation between the plaintiff and Mr. Morton, the plaintiff "was obviously upset about numerous things[,] which were unfounded," and "was loud and insubordinate[,] which cannot be tolerated" (def. m.s.j., ex. D (D0039)).  The plaintiff was warned that "[t]his type of behavior is unprofessional and unbecoming of an ABM[Co] manager," and [i]t cannot happen again" (*id.*).  The plaintiff disagrees that he was loud and insubordinate or disrespectful, but he admits that he received the Notice and that he signed it despite his disagreement, he says, to avoid any further trouble (pl. dep at 152-54).  In January 2003, Monty Rigsby, the Manufacturing Manager at the US8 job site, wrote a letter to the plaintiff's supervisor noting that the plaintiff and his crew were "a tremendous asset to [the] organization" and his contributions were "greatly appreciate[d]" (pl. resp. m.s.j., ex. 2).  The plaintiff also received a "Road Warrior Award" from the defendant recognizing his success at the US8 plant and a commendation from Don Champion, his Branch Manager, noting his "major contribution" to the success of the defendant at the US8 facility.

On December 28, 2004, the plaintiff clashed with Terry Burton, one of Michelin's managers who worked at the US8 job site (pl. dep. at 154-65).  The end result of the dispute was that Terry Burton sent the defendant an email requesting that the plaintiff "not be allowed to work at US8 starting Wednesday 29, December 2004" (def. m.s.j., ex. E).  Immediately after this incident, the plaintiff called his supervisor, Operations Manager Dale Morton, to explain what had happened (pl. dep. at 166).  Mr. Morton told the plaintiff not to return to the US8 job site (*id.* at 176 - "Dale told me over the phone . . . not to go back to US8").  At some point thereafter, the defendant talked to the plaintiff about a transfer to a different job site (*id.* at 171; *see id*. at 179 - "Yes, they offered me another position"; *id.* at 80).  On January 27, 2005, the plaintiff received a letter from Assistant Regional Manager Don Champion setting forth the new position (*id*. at 171, 173; *see* def. m.s.j., ex. F ("In an effort to formalize all employment related issues pertinent to ABM Industries protocol I am

3

noting the following changes relative to your position of Account Manager. Your new position will be Supervisor, effective 02-01-05. Your new rate of pay will be salary at a rate of 25,000 per year. Your benefits will be unchanged.").

The plaintiff never contacted Don Champion to accept the position outlined in the January 27, 2005, letter (pl. dep. at 174). Instead, he had a conversation with another employee of the defendant in which he complained that the offer of a $25,000 yearly salary was $10,000 less than the salary he received in his previous position (*id*. at 174-75). On February 14, 2005, the plaintiff received a letter from Rick Lang in which Mr. Lang asked the plaintiff to make a decision as to whether he intended to take the new supervisor position offered by Mr. Champion in the January 27, 2005, letter (*id*. at 177-78; *see* def. m.s.j., ex. G). Mr. Lang advised the plaintiff that if he did not hear from him within seven days, he would assume that the plaintiff resigned and was not interested in the position (def. m.s.j., ex. G). The plaintiff admits that no one from the defendant ever said that he was being fired (*see* pl. dep. at 176-78).

On February 23, 2005, the defendant received a letter from an attorney hired by the plaintiff (def. m.s.j., ex. H). The letter requested that the defendant "process all termination documents necessary" to allow the plaintiff access to his company sponsored 401K plan (*id).* On March 4, 2005, Gilda Malek, Deputy General Counsel for the defendant, responded, stating that the defendant "ha[d] not terminated Mr. Williford's employment" (def. m.s.j., ex. I; see pl. dep. at 180-81). The letter continued, "[a]lthough due to customer complaints, ABM[Co] removed Mr. Williford from his former position, on January 27, 2005, the Company offered Mr. Williford a supervisory position at a different location," and was "waiting for a response to its offer from Mr. Williford" (def. m.s.j., ex. I; *see* pl. dep. at 180-81). The defendant did not receive any further response from the plaintiff regarding its offer (Duncan aff. ¶ 8). According to the defendant's Regional Risk Management Director, when the defendant did not hear from the plaintiff regarding the position, the defendant assumed

4

that the plaintiff did not intend to take the new position and, thereafter, discontinued making salary payments to him (Duncan aff. ¶ 8).

The plaintiff was replaced in his position at the US8 job site by an employee named Gene Wofford, a white male who was 48 years old at that time (Duncan aff. ¶ 9). In October 2005, the position was given to Cheryl Chaney, a black female who was at that time 32 years old (*id.*)

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold

5

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Race and Age Discrimination*

The plaintiff alleges claims for race discrimination in violation of Title VII and age discrimination in violation of the ADEA. He claims that he was terminated from employment on the basis of his race and/or age.

Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the allocation of proof is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802-03).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

Pursuant to this framework, in order to maintain a claim for discrimination in the enforcement of employee disciplinary measures, the plaintiff must prove: "(1) that he is a member of [a protected class]; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Bryant v. Bell Atlantic, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002)(citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)).

The plaintiff does not dispute that the defendant's customer, Michelin, requested that he be removed from the US8 job site because he had an altercation with the job site manager. The plaintiff has come forward with absolutely no evidence showing that

employees who are not members of the protected class were retained under similar circumstances. Alternatively, the plaintiff may establish a *prima facie* case by showing that he was replaced by someone outside his protected class. *Lettieri v. Equant, Inc.*, 478 F.3d 640, 646 (4th Cir. 2005). The plaintiff was initially replaced by a white male who was 48 years old at the time and several months later the position was given to a black female. As argued by the defendant, the plaintiff's replacements were within his protected categories and thus indicate a *lack* of racial animus.

Even assuming the plaintiff can establish *prima facie* cases of race and age discrimination, the defendant has come forward with a legitimate, non-discriminatory reason for removing the plaintiff from the US8 website. As discussed above, the defendant has presented evidence that Michelin requested that the plaintiff not return to the job site. Thereafter, the plaintiff was offered another position at a lower salary, which he did not take. The plaintiff cannot show that this reason was a pretext for either race or age discrimination.

As evidence of discriminatory animus, the plaintiff contends that he had an altercation with his direct supervisor, Dale Morton, three or four months before he was removed from the US8 job site. He claims that during that argument, Mr. Morton called him a "black SOB." A couple of days later, Mr. Morton apologized to the plaintiff (pl. dep. at 55-59). There is no evidence that the incident between the plaintiff and his supervisor was in any way related to his removal from the US8 job site at the request of Michelin. Further, the comment by Mr. Morton appears to have been an isolated remark. *See Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994) (statement made over two years before discharge was too remote in time to serve as evidence of age discrimination, and the fact that the remark was made on only one occasion further supports the court's conclusion); *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) ("Brinkley has produced a few isolated statements indicating sexist attitudes at HRC, but utterly fails to connect any of the incidents with her eventual demotion and termination"),

*abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). The plaintiff also claims that Terry Burton, a Michelin manager, once told him "that when one of the other Michelin managers went on vacation that I better go with him (the manager in question is black)" (pl. resp. m.s.j. 5). As noted by the defendant, Mr. Burton worked for Michelin, not the defendant. Further, the comment does not establish that the defendant's remove of the plaintiff from his position was motivated by discriminatory animus. The plaintiff has failed to meet his burden of showing that the defendant's articulated reason was a pretext for an unlawful discriminatory motive.

In *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Supreme Court eliminated the "direct evidence" requirement in Title VII cases, holding that in order to qualify for a mixed-motive instruction, "a plaintiff need only present sufficient evidence [direct or circumstantial] for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Id*. at 101-102 (quoting 42 U.S.C. §2000e-2(m)). The plaintiff has made no such showing. Therefore, even applying the more liberal "mixed motive" standard, the plaintiff's discrimination claims are without merit. "Regardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 286 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). Here, the plaintiff has failed to come forward with such evidence.

The plaintiff also claims that he was denied compensation, raises, bonuses, commissions, and benefits, and he was subjected to adverse working conditions because of his age and/or race. The plaintiff specifically alleges the following:

(1) He was treated like "a pariah" because he was never called to the managers meetings. Instead, he had to find out over the phone what had been discussed at those meetings (pl. dep. at 43).

(2) One time, he was told over the phone that "during the next managers meeting, [he] would receive the manager-of-the-year award for the year." Later, a manager from a different US2 job site told him that he was not going to get the manager-of-the-year award after all (*id.* at 44-45).

(3) He believes that other sites had more than one manager or supervisor, while he was the only manager at his job site (*id.* at 52-53). This was a problem because he could not take vacation, and "ran the place 24/7" (*id.* at 52). Moreover, even those times when he had help at his job site, ABMCo would find "some excuse to take [that help] away" (*id.*).

(4) He was denied a company gas card, use of a company vehicle, computer equipment, and adequate supplies. *See* EEOC Charge No. 146-2005-01428.

(5) He was never paid for certain "tag sales," sales commissions for an additional sale made to a customer at a job site (pl. resp. m.s.j. 6).

The plaintiff has failed to present any evidence supporting his claims that he was treated adversely because of his age and/or race. Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). The evidence presented by the defendant shows that the plaintiff received a shipment of supplies at the job site at least once every month; the defendant issues company vehicles and gas cards only to managers with multiple locations of responsibility or to managers responsible for transporting supplies and/or personnel; the plaintiff worked at only one location and was not required to transport supplies or personnel; two of the four managers who did receive a company vehicle and gas card were black, and all were over the age of 40; computers were given to managers only when customers at the

job site requested that the manager be given one; Michelin did not make such a request; two of the four managers who did receive computers at the customer's request were black, and three of the four were over the age of 40; and the plaintiff's pay history shows that he did receive raises (Duncan aff. ¶¶ 10-13). The plaintiff admits that he has never seen payroll records for any other account managers and that he has only "heard" what they were making (pl. dep. at 51-52). Two of the account managers who the plaintiff claims received a higher salaries than him are black, and one was possibly in his forties (*id.* at 48-55). Further, the defendant has presented evidence that the account managers were paid according to the individual contract with the customer at each site (Duncan aff. ¶ 13). As for the plaintiff's allegations that he was not paid for certain "tags" or sales commissions, the defendant submitted the affidavit of Darcy Parrett, a Branch Administrator for the defendant, who testified that the plaintiff was paid for every tag submitted by him that met the company policy for payment of tags in effect at the time of the submission (Def. m.s.j., ex. K, Parrett dep. ¶ 6). Based upon the foregoing, the plaintiff has failed to raise an issue of material fact on his claims.

Based upon the foregoing, summary judgment should be granted on the plaintiff's Title VII and ADEA claims.

### *South Carolina Payment of Wages Act*

The South Carolina Payment of Wages Act ("the Act") prohibits employers from unilaterally withholding an employee's benefits. *See* S.C. Code Ann. § 41-10-40(C) (2006). The Act provides that "[a]ny civil action for the recovery of wages must be commenced within three years after the wages become due." S.C. Code Ann. § 41-10-80(C) (2006). In response to the defendant's motion for summary judgment, the plaintiff submitted four "Work Order and Agreement" documents evidencing "tags" or sales commissions that he claims were not paid by the defendant. The plaintiff filed this lawsuit

on June 26, 2006. The tag sales reflected on the documents submitted by the plaintiff in opposition to the motion for summary judgment all occurred in February 2003 or earlier. Consequently, they are time-barred. Further, as noted above, the defendant submitted evidence that plaintiff was paid for every tag submitted by him that met the company policy for payment of tags in effect at the time of the submission (Parrett dep. ¶ 6). The plaintiff did not dispute the defendant's evidence by showing that these tags met company policy or that the defendant was otherwise obligated to make payment on these tags. Accordingly, the plaintiff's claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant's motion for summary judgment (doc. 84) be granted.

                                            s/William M. Catoe
                                            United States Magistrate Judge

June 4, 2008

Greenville, South Carolina